FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| DOUGLAS CREEL and ALEJANDRA CREEL,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>Defendant. | NO: 2:16-CV-400-RMP<br><br>ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment from Plaintiffs Douglas and Alejandra Creel, ECF No. 42, and Defendant State Farm Fire and Casualty Company ("State Farm"), ECF No. 39. Having reviewed all submitted documents related to the motions and having heard oral argument from the parties on February 28, 2018, the Court grants Defendant's summary judgment motion and denies Plaintiffs' motion.

/ / /

/ / /

/ / /

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ~ 1

**BACKGROUND**

*Facts*

The following facts are undisputed, unless otherwise noted.

On November 17, 2015, a record-breaking windstorm felled a tree that inflicted severe damage on the house of Plaintiffs Alejandra and Douglas Creel, in south Spokane. *See* ECF No. 41-1 at 2–3. At the time of the storm, the Creels were insured by State Farm under a homeowner's insurance policy covering damage to their dwelling ("Coverage A") and to their personal property ("Coverage B"), as well as additional living expenses ("Coverage C") as a result of their loss. ECF Nos. 41-2 at 6–7; 41-5 at 9. Only the coverage for damage to the Creels' dwelling, Coverage A, is at issue in this lawsuit.[1]

The night of the windstorm, the Creels entered into a contract with a restoration contractor, Guardian Restoration ("Guardian"), to perform the repairs on

---

[1] The Court disregards claims that State Farm owes more to the Creels for asbestos damage to their personal property and for additional living expenses because those claims were raised for the first time in Plaintiffs' response to Defendant's motion for summary judgment and are not present in their amended complaint. *See* ECF Nos. 33; 43 at 3, 7. Indeed, at his deposition, Mr. Creel stated that their dispute with State Farm concerns the settlement of the Creels' structural damage claim only, and not their claim for loss of contents. ECF No. 41-5 at 8. The Court also disregards the Creels' assertion of emotional distress damages, which are not pleaded in their Amended Complaint. *Compare* ECF No. 43 at 3 (claiming emotional distress damages in response to Defendant's summary judgment motion) *with* ECF No. 33 (Amended Complaint).

their house. ECF No. 41-5 at 4–5. Mr. Creel reported the loss to State Farm the following morning. ECF No. 41-5 at 6. State Farm accepted the Creels' claim.

A State Farm adjustor inspected the property on November 22, 2015, and on or around December 4, 2015, made an initial estimate of the loss associated with the structural damage to the house. ECF No. 41-2 at 2–3.

The Creels' policy through State Farm insured the "cost to repair or replace with similar construction and for the same use . . . the damaged part of the property . . . ." ECF No. 41-17 at 2. The policy further provided that:

> (1)  until actual repair or replacement is completed, [State Farm] will pay only the actual cash value at the time of the loss of the applicable limit of liability shown in the Declarations, not to exceed the cost to repair or replace the damaged part of the property;
> (2)  when the repair or replacement is actually completed [State Farm] will pay the covered additional amount [the insured] actually and necessarily spend[s] to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less;
> (3)  to receive any additional payments on a replacement cost basis, [the insured] must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify [State Farm] within 30 days after the work has been completed;
> . . . .

ECF No. 41-17 at 2.

It is undisputed that State Farm paid the Creels for the replacement and repair of the damaged property, rather than the actual cash value of the property, which would have included depreciation. ECF No. 41-2 at 12–13. State Farm avers that it paid replacement cost to the Creels because the Creels immediately retained a

contractor to perform the work and represented throughout the claims adjustment process that their intention was to repair the property. *Id.*

State Farm's structural damage claim policy further bound the insurer to provide the insured "with a detailed estimate of the scope of the damage and cost of repairs." ECF No. 41-8 at 1. In a document explaining the policy, State Farm informed the Creels:

> If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs.

ECF No. 46-18 at 1.

By December 30, 2015, Guardian estimated the total cost to restore the dwelling as $330,829.78. ECF No. 41-14. State Farm initially estimated $95,512.95 in damage to the dwelling under Coverage A and paid the Creels that amount on December 4, 2015. ECF No. 41-2 at 2–3, 7. According to State Farm's adjustor, the initial Coverage A payment covered the damage apparent during State Farm's first visual inspection of the premises. ECF No. 41-2 at 3. Guardian next supplied an estimate to the Creels and State Farm that included $73,936.76 in demolition and asbestos removal. A State Farm adjuster met with a representative of Guardian on January 28, 2016, to inspect the property with respect to Guardian's estimate. Subsequently, on February 1, 2016, State Farm paid the Creels an additional

$81,769.11 under Coverage A for asbestos abatement, demolition, and estimate revisions. ECF No. 41-2 at 4–6, 8.

From March until June 2016, State Farm and Guardian went back and forth with estimates regarding the comprehensive replacement cost for the damaged portions of the Creels' house. In April 2016, State Farm engaged an engineer to provide a "structural engineering opinion regarding the extent of repairs necessary to restore the home . . . ." ECF No. 46-17. By June 17, 2016, State Farm updated its estimate to $208,756.24 to repair the damage to the dwelling, and paid the Creels the difference between that estimate and its previous estimate. ECF No. 41-5 at 7. State Farm also requested that the Creels begin construction at that time. ECF No. 41-5 at 7. As of late June 2016, State Farm's estimate of comprehensive repair cost was approximately $122,000 less than Guardian's estimate. ECF Nos. 14-13 and 14-14.

Around June 2016, Ms. Creel casually encountered an agent from the local State Farm office while both women were pursuing a hobby; after hearing Ms. Creel's frustrations regarding what she perceived as a stalled adjustment process, the agent suggested to the Creels two alternative contractors to contact for repair estimates. ECF No. 41-5 at 7. Mr. Creel contacted one of the two businesses, Capstone Construction Co., Inc. ("Capstone"), and asked for an estimate to repair their property. *Id.* On July 1, 2016, the Creels informed State Farm that they had parted ways with Guardian and selected Capstone as their restoration contractor.

Among other items, the contract between the Creels and Capstone provided:

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ~ 5

> The scope of repairs that is or will be prepared will be a fair assessment of the work that needs to be performed. Should additional work be needed or wanted, CAPSTONE will either work with the CUSTOMER to produce a change order reflecting the additions, or contact the CUSTOMER'S insurance company to process a supplemental Insurance claim.

ECF No. 41-15 at 6 (capitalization in original).

State Farm and Capstone went back and forth regarding estimates throughout July and August 2016. State Farm accepted in full Capstone's final estimate, dated September 14, 2016, in the amount of $208,093.39 and paid the Creels an additional $73,173.42 on September 29, 2016, to cover the difference between the Capstone estimate and the amount State Farm had previously paid, for a total of $208,093.39 in payments. Capstone's estimator attested that the $208,093.39 was "sufficient for [Capstone] to do the restoration or repairs barring any unforeseen damage or needed work discovered during the course of work." ECF No. 41-15.

Meanwhile, on September 1, 2016, the Creels entered a contract to purchase a different house in Spokane, and, without telling State Farm or Capstone, they sold the house damaged by the windstorm "as is" on September 22, 2016. ECF No. 41-5 at 2–3. On September 17, 2016, a few days before the sale of the damaged house closed, an Oregon-based Public Adjuster, Paul Moreland, inspected the property.

On approximately October 7, 2016, Mr. Creel advised Capstone that they had sold the property and would not be proceeding with the restoration. ECF No. 41-15 at 5. On October 13, 2016, Mr. Moreland sent to State Farm his estimate of total

damage to the Creels' former house in the amount of $413,126.45. Also that month, in a separate case that both counsel in this matter were litigating at the time, it became clear that Mr. Moreland was not licensed as a Public Adjuster in 2016 in Washington State. On October 27, 2016, the Creels' counsel notified State Farm that he had been retained to represent the Creels in their claim and that Mr. Moreland would no longer act as their Public Adjuster in the matter. ECF No. 50-7 at 1. However, the Creels continue to rely on Mr. Moreland's estimate to support their claims in this lawsuit.

The Creels filed the present lawsuit on November 10, 2016, claiming to "own," in the present tense, the real property at issue in their claims. *See* ECF Nos. 1 at 2 (Complaint filed on November 10, 2016); 33 at 2 (Amended Complaint filed on May 17, 2017). State Farm learned of the Creels' sale of the house during the course of discovery. On September 27, 2017, following a deposition of the State Farm team manager who was involved in the Creels' claim in which the Creels' attorney questioned the omission of track lighting from the Capstone estimate, State Farm paid the Creels an additional $476.27 for the cost of replacing track lighting. ECF No. 41-3. To date, State Farm has paid the Creels $259,281.01, under Coverage A, less their policy deductible, for structural damage to their former dwelling. *Id*.

# LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. If the moving party meets this challenge, the burden shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." *Id.* at 324 (internal quotations omitted). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). In deciding a motion for summary judgment, the court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pacific Electric Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir. 1987).

**JURISDICTION**

This matter is before the Court on diversity jurisdiction, with an allegation at the outset of the case that approximately $169,321.71 is in controversy. 18 U.S.C. § 1332; ECF No. 1-1.

**DISCUSSION**

Defendant moves for summary judgment dismissal of Plaintiffs' complaint in full, whereas Plaintiffs state in their motion that they seek summary judgment in their favor on their claims under the Insurance Fair Conduct Act ("IFCA"), the Washington Consumer Protection Act ("CPA"), and all of the breach of contract claims, except the claim for underpayment of approximately $150,000 on the structure of their former residence. *See* ECF Nos. 42 at 2; 52 at 2. Several characterizations of the claims process and outcome are common to all of the claims. The Creels maintain that the claims adjustment process was unnecessarily slow, unpredictable, and hostile to their initial selection of a contractor. They also claim that the scope of damage that State Farm determined in its final estimate should have resulted in approximately $150,000 more in compensation to the Creels for the damage to their former house.

State Farm, by contrast, emphasizes that State Farm engaged with Plaintiffs from the moment that Plaintiffs reported the loss with the understanding that Plaintiffs intended to repair the house; therefore, State Farm paid replacement cost rather than actual cash value, which would have had depreciation deducted.

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 9

Moreover, State Farm accepted in full Capstone's estimate with the caveat that supplemental estimates could be generated to account for any unforeseen items. State Farm posits that by paying Plaintiffs the full amount that Plaintiffs' contractor agreed was necessary to repair the house, barring unforeseen damages that could be addressed through revised estimates, the insurer satisfied the terms of Plaintiffs' policy.

The Court addresses each type of claim in turn.

***Insurance Fair Conduct Act Claim***

IFCA creates a cause of action for a first-party insured whose insurer "unreasonably denied a claim for coverage or payment of benefits . . . ." RCW 48.30.015(1). An insurer may be liable under IFCA only for damages that are proximately caused by the unreasonable denial of a claim. *See Schreib v. Am. Family Ins. Co.*, 129 F.Supp.3d 1129, 1137 (W.D. Wash. 2015).

Plaintiffs' IFCA claims are based on their allegations that Defendant fell short of its obligations under Washington insurance regulations, including adequately explaining Plaintiffs' rights or benefits under their policy, communicating promptly with Plaintiffs, and processing Plaintiffs' claims without undue delay. Plaintiffs further maintain that Defendant violated IFCA's implementing regulations by compelling Plaintiffs to initiate litigation to recover the amounts due under the insurance policy. *See* WAC § 284-30-330(7).

Defendants argue that State Farm's award of benefits in September 2016 left open the possibility that unforeseen damages could be discovered in the restoration process and remedied, but that Plaintiffs' sale of the house forestalled the possibility of evaluating the sufficiency of Defendant's payment.

The Washington Supreme Court's recent decision in *Perez-Crisantos v. State Farm Fire and Casualty Co.*, 187 Wn.2d 669, 680–85 (2017), firmly established that IFCA does not create an independent cause of action for alleged regulatory violations. Any IFCA cause of action based on a regulatory violation also must entail an unreasonable denial of benefits by the insurer. *Id.* Other courts considering the reasonableness of an insurer's denial of benefits have based their summary judgment determination on whether it is beyond dispute that an insurer knew at the time that it made its offer to settle the claim that the value of the claim was much higher and/or that the payment amount was not based on a reasonable evaluation of the facts and "would not compensate the insured for the loss at issue." *Morella v. Safeco Ins. Co. of Ill.*, 2013 U.S. Dist. LEXIS 53255, *12, 2013 WL 1562032, *3 (W.D. Wash. Apr. 12, 2013) (holding that an insurer's offer was an unreasonable denial of benefits where it valued the insured's claim internally between $11,194.80 and $15,694.80 but offered only $1,500 to settle the claim).

The questions posed by the parties' cross-motions are whether State Farm's September 2016 payment to the Creels to resolve their claim for structural damage

to their dwelling was unreasonable as a matter of law, or, alternatively, was *not* unreasonable as a matter of law.

The Court concludes that there was no unreasonable denial of benefits in this case. State Farm paid the Creels the full amount that the Creels' contractor asserted that it would cost to repair the Creels' house. There is no dispute that the Creels accepted State Farm's payment without qualification and that the Creels' own contractor had agreed to perform the work necessary to repair the house for the amount that State Farm paid. Moreover, when presented with the issue of track lighting as a missing line item in the course of this lawsuit, there is no dispute that State Farm promptly paid the Creels more money to remedy that oversight.

Plaintiffs contend that material disputes of fact exist as to the insurer's apparent oversight with respect to track lighting (which the insurer promptly remedied upon being alerted to the deficit), or errors regarding the cost of repair as based on Mr. Moreland's estimate, or the replacement of open-cell insulation rather than closed-cell insulation. However, the Court finds that there are no material disputes of fact regarding whether Defendant unreasonably denied coverage. Rather, the evidence supports one conclusion: the extended reconciliation process between State Farm and Guardian and later between State Farm and Capstone amounted to an effort "to compensate the insured for the loss at issue." *Morella*, 2013 U.S. Dist. LEXIS 53255, *10.

Therefore, the Court finds that summary judgment for State Farm on the IFCA claims is appropriate.

### *Washington Consumer Protection Act Claim*

To prevail on a claim under the CPA, a plaintiff must demonstrate five elements: (1) an unfair or deceptive act or practice; (2) that occurred in trade or commerce; (3) results in an impact to the public interest; (4) injures the plaintiff in his or her business or property; and (5) causes the injuries at issue. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 780 (Wash. 1986). "[A] denial of coverage, although incorrect, based on reasonable conduct of the insurer does not constitute an unfair trade practice." *Leingang v. Pierce County Medical Bureau*, 131 Wn.2d 133, 155 (Wash. 1997). However, the Washington State Supreme Court has found a violation of WAC § 284-30-330 to "constitute a *per se* unfair trade practice by virtue of the legislative declaration in [Rev. Code Wash.] 19.86.170." *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 923 (Wash. 1990). Plaintiffs allege that Defendant violated subsection (7) of § 284-30-330, defining the practice of compelling an insured to initiate or submit to litigation to recover an amount due under the policy as an unfair or deceptive act or practice.

Viewing the pleadings and accompanying materials in the light most favorable to Plaintiffs, Plaintiffs neither specify any losses that would qualify as damages under the CPA, nor allege any actions by State Farm that amount to an unfair or deceptive trade practice. The Court further finds no material issue of fact that State

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 13

Farm compelled the Creels to resort to litigation to recover the amount to which they were entitled under the policy. Approximately two months before the Creels initiated this litigation, the Creels received the amount that their contractor estimated as the full sum required to repair the residence. The Creels have not come forth with evidence to show that they were entitled to, or that there is a question of fact whether they were entitled to, anything more under their policy. Therefore, the Court finds that summary judgment for State Farm on the CPA claim is appropriate.

### *Breach of Contract Claims*

A plaintiff claiming breach of contract "must prove that a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged." *Univ. of Wash. v. Gov't Emps. Ins. Co.*, 200 Wn. App. 455, 467 (Wash. Div. 1 2017) (citing *Lehrer v. Dep't of Soc. & Health Servs.*, 101 Wn. App. 509, 516 (Wash. 2000)). Under Washington law, interpretation of an insurance policy is a question of law, and the court must construe the policy as a whole and give each clause force and effect. *Overton v. Consolidated Ins. Co.*, 145 Wn.2d 417 (Wash. 2002).

Plaintiffs argue that State Farm abdicated their responsibility to reconcile, for each line item of structural damage, the difference between their estimate and Capstone's estimate. Plaintiffs continue that, as a result, Defendant's final settlement of the claim with Plaintiffs did not cover all of the repair work that Defendant itself had identified as needed. Defendant responds that a line-by-line

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT ~ 14

reconciliation was unnecessary by September 2016 because the efforts between State Farm and Capstone over July and August 2016 had determined the agreed-upon scope of work required to restore the house.

The undisputed facts establish that the terms of Plaintiffs' coverage provided for the "cost to repair or replace with similar construction and for the same use . . . the damaged part of property . . . ." ECF No. 41-17 at 1. Plaintiffs accepted the payment for the amount that Capstone had agreed to repair the Plaintiffs' former house, subject to unforeseen damages that became apparent in the process of repair.

Plaintiffs suggest that they switched contractors to a contractor that had been suggested by State Farm as a means of expediting what Plaintiffs considered to be a sluggish claims adjustment process. However, Plaintiffs do not show how this fact is material to any of their claims or to their breach of contract claim in particular. There is no dispute in the record that Plaintiffs had entered their own agreement with Capstone, had presented Capstone to State Farm as Plaintiffs' contractor, and were privy to the Capstone estimate that State Farm used as a basis for their final adjustment in September 2016.

In addition, Plaintiffs have presented no theory to the Court as to how Defendant might have breached the insurance contract by declining to pay the full amount of Guardian's higher estimates or by failing to adequately explain Plaintiffs' coverage to them, even if the Court were to assume that there was such a failure. Plaintiffs accepted State Farm's payment for replacement cost after they already had

ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ~ 15

sold their house, rather than notifying State Farm that they would not be repairing the premises. Plaintiffs then allowed a Public Adjuster, who was not a contractor or a licensed adjuster in Washington, to submit to State Farm an alternative and much higher estimate for the cost to repair the house, apparently as an ambiguous request for more compensation. Viewing these facts in the light most favorable to Plaintiffs, the Court finds that there is no material dispute fact that State Farm did not breach their duties under the contract. Therefore, the Court finds that summary judgment for State Farm on the breach of contract claims is appropriate.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiffs' Motion for Partial Summary Judgment, **ECF No. 42**, is **DENIED**.
2. Defendant's Motion for Summary Judgment, **ECF No. 39**, is **GRANTED**.
3. Judgment shall be entered for Defendant.
4. Any pending motions are **DENIED AS MOOT**, and all upcoming hearings and deadlines are **STRICKEN**.

The District Court Clerk is directed to enter this Order, provide copies to counsel, enter judgment as directed, and **close the case**.

**DATED** March 16, 2018.

                                      *s/ Rosanna Malouf Peterson*
                                      ROSANNA MALOUF PETERSON
                                      United States District Judge